UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LANNY DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:05-CV-2267 CEJ |
| | ) |
| MCI COMMUNICATIONS SERVICES, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff has responded, and the issues are fully briefed.

The facts underlying this matter are not in dispute. In 2003, plaintiff's son Richard was a soldier stationed in Iraq. In May of 2003, plaintiff accepted a number of collect calls, including at least one from Richard on May 20. Although plaintiff was a telecommunications customer of SBC, the collect calls were carried by defendant MCI. MCI monitors calls transmitted on its network for fraudulent activity, and collect calls to the plaintiff triggered a "high toll alarm."[1] After the alarm was triggered, MCI was unable to immediately verify the legitimacy of the calls received by plaintiff, so on May 22, 2003, MCI placed a temporary restriction on the plaintiff's ability to receive or make calls on

---

[1] The high toll alarm alerts MCI to potentially fraudulent activity on its network. MCI's policy regarding these alarms is to verify the calls, the receiver's ability to pay, and the receiver's current billing status with his or her local carrier. Until this is done, MCI places a restriction on the customer's ability to receive calls over MCI's network.

its network.  MCI contacted the plaintiff by phone and by letter, and after the plaintiff called MCI's high toll department, his ability to pay was verified and MCI removed the restriction on his use of MCI's network.[2]  MCI's network was unavailable to the plaintiff for a total of six days, but during that time he was still able to make and receive long-distance and local calls on other networks.

Unfortunately, the phone call on May 20, 2003 was the last time that plaintiff had contact with his son, because Richard was killed on July 14, 2003, shortly after he returned from Iraq. During that last telephone conversation, Richard was extremely distressed and he begged plaintiff to "take him out of there." Plaintiff now brings suit for intentional and negligent infliction of emotional distress and breach of fiduciary duty stemming from the six-day interruption of MCI network capability.

**Legal Standard**

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The court must "assume that well-pleaded factual allegations in the complaint are true 'and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.'" Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (citation

---

[2] MCI contacted plaintiff by phone within one day of suspending his service and left a message on plaintiff's answering machine.  Perceiving it as a solicitation to subscribe to MCI, plaintiff did not call MCI until he received a letter a few days later.  MCI restored plaintiff's access to its network within a day of confirming his ability to pay the collect toll charges.

omitted). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997). However, a court may not "blindly accept the legal conclusions drawn by the pleader from the facts." Westcott, 901 F.2d at 1488.

**Negligent Infliction of Emotional Distress**

This case arises under the Court's diversity jurisdiction, and thus Missouri law applies. Under Missouri law,

> [t]he tort of negligent infliction of emotional distress is a negligence action. The general elements of a negligence action are 1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff. Claims seeking recovery of damages for the negligent infliction of emotional distress require proof of two additional elements: 1) that the defendant should have realized that his conduct involved an unreasonable risk of distress, and 2) that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.

Thornburg v. Federal Express Corp., 62 S.W.3d 421, 427 (Mo. App. 2001) (internal citations omitted).

It is not entirely clear what actions of MCI's plaintiff blames for his emotional distress. He alleges that the MCI representative who talked with him when verifying the collect calls and his ability to pay was "extremely rude." He also complains that he "pre-paid the phone bill that [had] not yet been billed or received by the Plaintiff." However, it appears that the most likely cause of distress is that the interruption of MCI service

impeded plaintiff's ability to talk further with his son, "learn more about the reasons for his distress, provide guidance and undertake actions to save Richard's life." Compl. at ¶ 46. For the purposes of this claim, and reading the complaint in the light most favorable to the plaintiff, the Court will assume that the relevant action of MCI was the interruption of the service, not the phone manner of MCI's representative or the defendant's billing practices.[3]

Importantly, plaintiff does not allege that he attempted to contact his son and was unable to establish a connection. To the contrary, plaintiff admits that he had no way of initiating contact with Richard because he had no fixed phone number while stationed in Iraq. Plaintiff also does not allege that Richard attempted to contact his parents during the six days of MCI service suspension. Thus, the complaint appears to be premised on the *possibility* that Richard might have tried to place a collect call which would have been carried on the MCI network during the six days of service suspension.[4]

---

[3] Plaintiff states as much in his Memorandum in Opposition: "Unjustified interruption by the MCI [sic] in his ability to talk with his son Richard, subsequently killed, caused Plaintiff to suffer from emotional distress of such severity after his son's death that it in fact is diagnosed and treated as a psychiatric disorder."

[4] Plaintiff alleges in his Memorandum in Opposition, although not in his complaint, that he received "several calls when the phone was dead," and he "believe[s] the calls were from Richard." Mem. in Opp. at 4. Plaintiff states that the calls "could have happened" during the interruption in service. Id. These are mere suppositions, not facts which would establish that a call was attempted and failed.

Plaintiff's claim of negligent infliction of emotional distress fails on several grounds. First, although plaintiff alleges without elaboration that MCI had a general duty towards him, the facts do not support this conclusion. Plaintiff also alleges that the defendant owed him a specific duty of care, defining this as a duty to "verify the calls. . . establish the ability of the receiver to pay at the level of unbilled usage. . . [and] verify the receiver's current billing status with the customer's local carrier." Compl. at ¶ 48. However, the plaintiff then defines the breach of the aforementioned duties as MCI's failure to use "less restrictive means in performing [those] duties." Id. at ¶ 49.

A duty of care can be established by a statute, contract, or a special relationship between the parties. Scheibel v. Hillis, 531 S.W.2d 285, 288 (Mo. 1976). Plaintiff points to no statute that would create an obligation for MCI to use the "least restrictive means" in implementing its high-toll fraud monitoring policy. Nor is there a contract between MCI and the plaintiff, as it is undisputed that plaintiff was a long-distance customer of SBC, not MCI. In his memorandum in opposition, plaintiff expands on an argument only vaguely stated in his complaint to the effect that he was an intended beneficiary of a contract between MCI and the United States government "wherein [families of American servicemen] would only pay for the part [sic] of the costs of such collect calls." Compl. at ¶ 9. To extrapolate a duty from this contract, the primary parties to the contract must have

specifically agreed to act to benefit a third party.  See Stephens v. Great Southern Sav. & Loan Ass'n, 421 S.W.2d 332, 335 (Mo. App. 1967) ("[t]he intent necessary to establish the status of a third-party beneficiary is 'not so much a desire or purpose to confer a benefit on the third person, or to advance his interests or promote his welfare, but rather an intent that the promisor assume a direct obligation to him.'" (internal citation omitted)).  The mere existence of a contract between MCI and another party, which is all that plaintiff has alleged, is not an adequate basis for inferring an obligation of uninterrupted long-distance service to the plaintiff.

Lacking a statutory or contractual source of a duty, plaintiff turns to the circumstances of his relationship with MCI to find one.  In the negligence context, "[t]he touchstone for the creation of duty is foreseeability."  Millard v. Corrado, 14 S.W.3d 42, 47 (Mo. App. 1999).  "A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.  If, under the circumstances, a reasonably prudent person would have anticipated danger and provided against it, courts will recognize a legal duty to prevent harm."  Id. (internal citations omitted).

Plaintiff's emotional distress, quite naturally, flows from the death of his son, and he attempts to connect these circumstances to MCI's actions.  However, it was simply not foreseeable that a non-customer of MCI's would suffer emotional distress after a six-day interruption of one long-distance phone

service option.  Plaintiff must show that there was a likelihood, not just a possibility, of harm as a consequence of defendant's actions.  MCI had no duty to shelter plaintiff from the emotional distress attendant to his son's death, because neither the circumstances surrounding plaintiff's last communication with his son nor the resultant extreme emotional distress could reasonably have been foreseen by the defendant.

Plaintiff's allegations also fail to demonstrate the additional element of the negligent infliction of emotional distress claim, that defendant should have realized its actions created an unreasonable risk of injury to the plaintiff. Plaintiff's unforeseen injury negates the existence of a duty, and it follows from this that MCI could not have realized the unreasonable risk of an unforeseeable injury.

Finally, plaintiff alleges that his distress is due to the possibility that in his son's last weeks of life, plaintiff might have been able to take some action to prevent his son's death. These facts also fail to show causation -- a necessary link between the defendant's action and the resulting harm.  The events described here fail even a "but for" causal link, because plaintiff has not alleged that but for the interruption of service, he would have been able to prevent his son's death. Plaintiff states that *if* his son had called during those six days, he *might* have been able to counsel him and so *might* have prevented his murder. Additionally, plaintiff has not even alleged that MCI's network was his son's only method of communication with his parents.

> Proximate cause requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage.

State ex rel. Missouri Highway and Transp. Com'n v. Dierker, 961 S.W.2d 58, 60 (Mo. 1998). Plaintiff cannot say that but for the defendant's actions, he would not have suffered the emotional distress that he alleges, because the plaintiff might not have heard from his son again regardless of whether he had access to MCI's network.

Undoubtedly, the temporary inconvenience imposed by MCI's policy was distressing at an already emotionally fraught time. However, the facts alleged do not constitute negligence on the part of MCI.

**Intentional Infliction of Emotional Distress**

In claiming intentional infliction of emotional distress, plaintiff incorporates the facts underlying the negligence claim and alleges that further actions by the defendant caused extreme emotional distress. Specifically, he claims that counsel for defendant sent his attorney an offensive article about the circumstances of his son's death during the course of settlement negotiations. He also attributes his distress to the fact that MCI never apologized for its actions or timely responded to counsel's request for documents and information pertaining to the May 2003 interruption in service.

The letter from defendant's counsel was addressed to plaintiff's counsel and was written to decline a settlement offered on August 8, 2005. In closing, the defendant's counsel stated:

> MCI sympathizes with Davis family and is sorry for their loss. . . . However, MCI can not be held responsible for suffering that the Davis family has endured. . . . Their son was brutally murdered July 14, 2003 – after returning home from Iraq – under circumstances unrelated to the concerns alluded to in your April 21st letter. For your reference, I have attached an article which outlines the details of Richard Davis's murder.

The referenced article was written for the online Guerilla News Network by a freelance journalist, and focused on the soldiers who were accused of murdering Richard Davis. It also described the precipitating circumstances of his death, and referred to other articles and military investigations that had touched on his conduct in Iraq. Plaintiff does not allege that the defendant had any way of knowing that the article contained what plaintiff perceived as inaccuracies.

Defendant argues that the article, as part of a discussion held during settlement negotiations, is not admissible evidence pursuant to Federal Rule of Evidence 408. As an alternative to dismissal, defendant moves to strike this count on the basis of inadmissability. However, Rule 408 "excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule." Fed. R. Evid. 408 advisory committee's note. It does not bar evidence of independent wrongs committed during the course of the settlement negotiation. See Wright & Graham, Federal Practice and Procedure:

Evidence § 5314 ("Rule 408 is also inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like."). Although the article has some bearing on the validity of the claim (because it was sent by MCI to demonstrate its lack of responsibility for Richard's death), it is not offered by the plaintiff for that purpose. Rather, the plaintiff would offer the article as direct evidence of the defendant's intent to cause his emotional distress. Had the defendant committed a tort of intentional infliction of emotional distress during settlement negotiations, Rule 408 would not prohibit the introduction of the instrument of the offense.

However, even without considering the content of the article or letter, the facts as alleged fail to support a claim for intentional infliction of emotional distress. "To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotations omitted). "The conduct must be intended only to cause extreme emotional distress to the victim." Id. (internal quotations omitted). Furthermore, "it is for the court to determine, in the

first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Thornburg v. Federal Express Corp., 62 S.W.3d 421, 428 (Mo. App. 2001), quoting Viehweg v. Vic Tanny Intern. of Missouri, Inc., 732 S.W.2d 212, 213 (Mo. App. 1987).

The defendant clearly directed the letter with the attached article to opposing counsel, not to the plaintiff, demonstrating at the very least that MCI's sole intent was not to cause plaintiff's emotional distress. Plaintiff's counsel argues that "defendant sent highly offensive material about plaintiff's dead son to his grieving father." However, plaintiff's counsel also admits that she, not the plaintiff, was the recipient of the opposing counsel's letter. The content of the article had nothing to do with a settlement, and counsel was clearly not required to pass the article along to her client.

The only intent evident here was counsel's intent to demonstrate that her client was not remotely connected to the circumstances surrounding plaintiff's son's death. More importantly, the defendant's behavior, either in refusing to apologize or in attaching an article of debatable accuracy to a letter to opposing counsel, simply does not rise to the level of extreme and outrageous behavior proscribed by tort law. Plaintiff's hyperbole is unwarranted: defendant's actions do not exhibit "malice, willfulness, wantonness and inhumanity." Mem. in Opp. at 13.

**Breach of Fiduciary Duty**

-11-

Plaintiff's final claim is for breach of fiduciary duty. Again, he claims that he was an "intended beneficiary of the arrangement or contract between the U.S. government and MCI to provide network [sic] for long-distance calls for American servicemen." Compl. at ¶ 74. He states that a fiduciary relationship existed between him and MCI due to this special arrangement, which "imposed upon Defendant special duties of sensitivity. . ." and that plaintiff "justifiably relied on the defendant to ensure that his ability to place or receive long-distance phone calls would not be needlessly interrupted." Compl. at ¶¶ 75-76.

"A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." Shervin v. Huntleigh Securities Group, 85 S.W.3d 737, 740-41 (Mo. App. 2002). "In determining the existence of a fiduciary relationship, the key question is whether or not trust is reposed with respect to the property or business affairs of another." Grewell v. State Farm Mut. Auto Ins. Co., 162 S.W.3d 503, 509 (Mo. App. 2005). The relationship between a telecommunications company and a subscriber to another telecommunications service is not, as a matter of law, a fiduciary relationship. As for special circumstances, MCI protected no confidences of the plaintiff nor exerted influence over him. Plaintiff did not trust MCI with his property or

business affairs; in fact, he seemed to be unaware he had any connection to MCI at all until the interruption in service. Whether or not plaintiff "justifiably relied" on MCI to not "needlessly interrupt" his long distance service is irrelevant, as justifiable reliance alone does not create a fiduciary relationship. This fact situation is devoid of any basis for alleging the existence of a fiduciary relationship, and although plaintiff has no obligation to produce evidence at this stage, plaintiff's simple assertion that a fiduciary relationship existed is not enough to save the claim from a motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion to dismiss [#5] for failure to state a claim is **granted**.[5]

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th_day of March, 2006.

---

[5] At the end of his memorandum in opposition, plaintiff requests permission to amend his complaint. As the request is not the subject of a separate motion, and the plaintiff has not attached a proposed amended complaint, it is impossible to tell whether the amended complaint would cure the defects identified in this Order. Accordingly, the plaintiff's request to amend is denied.