UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LANNY DAVIS,                      )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )     No. 4:05-CV-2267 CEJ
                                  )
MCI COMMUNICATIONS SERVICES,      )
INC.,                             )
                                  )
            Defendant.            )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for sanctions against plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. Plaintiff's counsel has responded, and the issues are fully briefed.

Plaintiff initially filed his complaint in the Circuit Court of St. Charles County, Missouri, and defendant removed to this Court pursuant to 28 U.S.C. § 1441(a). Defendant alleges that the plaintiff's complaint is frivolous, not warranted by existing law, and that plaintiff's counsel could not have filed the complaint in good faith if she had conducted a reasonable assessment of the claims.

**Requirements of Rule 11**

Rule 11 requires that every pleading, written motion, or other paper be signed by an attorney or pro se party. By signing the paper, the signer represents to the court that "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law

or by a nonfrivolous argument for the extension, modification, or reversal of existing law. . . ." Fed. R. Civ. P. 11(b). A court may impose appropriate sanctions upon determining that Rule 11(b) has been violated, either *sua sponte* or after proper motion by a party. Fed. R. Civ. P. 11(c).

Motions for sanctions under the rule must be made separately from other motions or requests and must be served on the opposing party twenty-one days before filing with the court. This alerts the non-movant to the seriousness of the violation and provides a "safe harbor" in which the non-movant may withdraw or correct the challenged paper. See Gordon v. Unifund CCR Partners, 345 F.3d 1028 (8th Cir. 2003); Fed. R. Civ. P. 11, advisory committee's note (1993 amendments).

Plaintiff's counsel argues that the motion for sanctions filed with the Court on January 5, 2006, is untimely. She received a copy of this motion on or before December 12, 2005, but believes that it was not properly served because it lacked a certificate of service. Although Rule 11 requires that a copy of the motion for sanctions be served upon the opposing party according to Fed. R. Civ. P. 5, and Rule 5 requires a certificate of service to be attached to a document filed with the court, filing with the court is the only circumstance that requires a certificate of service.[1] The only mention of a certificate of service occurs in section (d)

---

[1] Indeed, the purpose of a certificate of service is to inform the court that the paper has been served on other parties. It would be nonsensical to tell a party that the document had been provided to that party.

of Rule 5, which states in pertinent part: "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court. . . ." Because the Rule 11 motion is, by its plain language, required to be served on the opposing party before being filed with the court, the notification to the opposing party does not require a certificate of service. Furthermore, Rule 5(b), which instructs how service should be made, contains no reference to a certificate of service.

Plaintiff's counsel does not otherwise argue that the defendant's procedure in filing the Rule 11 motion was deficient. She acknowledged receipt of defendant's motion in a letter to defense counsel on December 12, 2005, which was more than twenty-one days before it was filed with this court. Plaintiff did not withdraw the complaint or any individual claims during the pendency of the safe harbor. Therefore, the motion was timely made, and is properly before the Court.

Rule 11 does not grant a district court authority to impose sanctions based solely upon a complaint filed in state court which is thereafter removed to federal court. See Edwards v. General Motors Corp., 153 F.3d 242, 245 (5th Cir. 1998); Bisciglia v. Kenosha Unified School Dist. No. 1, 45 F.3d 223, 226 (7th Cir. 1995). Here, the allegedly frivolous complaint was filed in state court, and so is not directly subject to Rule 11. There is, however, a continuing duty after removal to not maintain frivolous or non-meritorious claims. See, e.g., Buster v. Greisen, 104 F.3d

1186, 1190 n.4 (9th Cir. 1997); Griffen v. City of Oklahoma City, 3 F.3d 336 (10th Cir. 1993); McCampbell v. KPMG Peat Marwick, 982 F. Supp. 445 (D. Tex. 1997). The advisory committee's notes to Rule 11 explains:

> [A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit. . . . Similarly, if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as presenting – and hence certifying to the district court under Rule 11 – those allegations.

Fed. R. Civ. P. 11, advisory committee's note (1993 amendments).

Plaintiff's counsel persisted in pressing the claims alleged in the state court petition after removal to federal court. Plaintiff filed a memorandum in opposition to defendant's motion to dismiss which developed the legal theories presented in the complaint, and also further defended the propriety of the claims in opposing the instant motion for sanctions. Unlike the complaint, these documents are subject to the requirements of Rule 11.[2]

---

[2] Additionally, although not raised by the parties, "a federal court may apply a state-law counterpart to Rule 11 to a pleading filed in state court prior to removal." Griffen v. City of Oklahoma City, 3 F.3d 336, 341 (10th Cir. 1993). Missouri's counterpart to Rule 11 is Supreme Court Rule 55.03. It substantially tracks the language of Rule 11, and a Missouri court has discussed the Missouri rule with reference to the committee notes of Fed. R. Civ. P. 11. Noland v. State Farm Mut. Auto. Ins. Co., 853 S.W.2d 327, 331 (Mo. App. 1993). However, because the defendant has not moved for sanctions pursuant to the Missouri rule, the Court will not separately analyze or assess sanctions under that rule.

In her defense, plaintiff's counsel argues that Missouri Statute 514.205 insulates attorneys from liability for frivolous filings when acting at the specific direction of a client. That statute is inapplicable to the sanctions motion presented here. Not only is Rule 11 separately applicable to claims maintained in federal court, but that statute provides a remedy against a *party* found to have initiated a frivolous cause: "In any civil action . . . if the court finds after a hearing for such purpose that the cause was initiated . . . frivolously and in bad faith, the court shall require the *party* who initiated such cause . . . to pay the other party named in such action the amount of the costs attributable thereto. . . ." Mo. Ann. Stat. § 514.205 (emphasis added). The limitation cited by the plaintiff, which circumscribes liability for attorneys acting in good faith and at the specific direction of a client, does not apply to Missouri Supreme Court Rule 55.03, which is parallel to Fed. R. Civ. P. 11 and imposes an obligation on the signer of a document presented to the court.

The scope and severity of sanctions under § 514.205 exceed those cited in Missouri Supreme Court Rule 55.03, which allows for sanctions "if warranted" and may include payment of a penalty to the court or to the other party of "some or all" of the reasonable attorney's fees or other expenses incurred. In contrast, § 514.205 requires a hearing and mandates sanctions in the amount spent in opposing the frivolous pleading:

> Section 514.205 concerns frivolous and bad faith pleadings and proceedings. It authorizes a court to award attorney fees and compensation to a party opposing

-5-

such pleadings or proceedings.  To make such an award, a
court must (1) conduct a hearing, (2) make a finding that
the pleading or proceeding 'was had frivolously and in
bad faith,' and (3) assess an amount based on the costs
and expenses attributable to opposing those pleadings or
proceedings.

W.E.F. v. C.J.F., 793 S.W.2d 446, 453 (Mo. App. 1990).

Whether or not counsel acted at the specific direction of her client, she is responsible for submitting pleadings and documents that conform to Rule 11 of the Federal Rules of Civil Procedure. The Court turns, therefore, to the substance of the claims advocated by the plaintiff's counsel.

**Factual Background and Plaintiff's Claims**

In 2003, Plaintiff's son Richard was a soldier stationed in Iraq.  In May of 2003, plaintiff accepted a number of collect calls, including at least one from Richard on May 20.  Although plaintiff was a telecommunications customer of SBC, the collect calls were carried by defendant MCI.  MCI monitors calls transmitted on its network for fraudulent activity, and the collect calls to the plaintiff triggered a "high toll alarm."[3]  After the alarm was triggered, MCI was unable to immediately verify the legitimacy of the calls received by plaintiff.  So on May 22, 2003, MCI placed a temporary restriction on the plaintiff's ability to receive or make calls on its network.  MCI contacted the plaintiff

---

[3] The high toll alarm alerts MCI to potentially fraudulent activity on its network.  MCI's policy regarding these alarms is to verify the calls, the receiver's ability to pay, and the receiver's current billing status with his or her local carrier.  Until this is done, MCI places a restriction on the customer's ability to receive calls over MCI's network.

-6-

by phone and by letter, and after the plaintiff called MCI's high toll department, his ability to pay was verified and MCI removed the restriction on his use of MCI's network.[4]  MCI's network was unavailable to the plaintiff for a total of six days, but he was still able to make and receive long-distance and local calls on other networks.

Unfortunately, the phone call on May 20, 2003 was the last time that plaintiff had contact with his son, because Richard was killed on July 14, 2003, shortly after he returned from Iraq. During his final call, Richard had been extremely distressed and begged his father to "take him out of there."  The gravamen of plaintiff's complaint is contained in a few sentences: "Plaintiff is convinced that if he talked more with his son after his last call, he would be able to gather more information and help Richard whose life could possibly be saved."  Mem. in Opp. to Mot. for Sanctions, at 2.  "[T]his case is not an attempt to deal with mishandling of some account by MCI's customer service.  All these occurrences are associated with Plaintiff's last phone talk to his son, subsequently savagely killed, which turn of events Plaintiff believes could be different if not for needless interruption of communications by MCI at such faithful [sic] time."  Id. at 3.

---

[4] MCI contacted plaintiff by phone within one day of suspending his service and left a message on plaintiff's answering machine.  Perceiving it as a solicitation to subscribe to MCI, plaintiff did not call MCI until he received a letter a few days later. MCI restored plaintiff's access to its network within a day of confirming his ability to pay the collect toll charges.

Plaintiff asserted three claims in his petition: 1) negligent infliction of emotional distress, 2) intentional infliction of emotional distress, and 3) breach of fiduciary duty. The Court dismissed the entire complaint for failure to state a claim. However, the fact that the claims were dismissed does not necessarily mean that they were frivolous. The test for frivolity for Rule 11 purposes is "whether a reasonable and competent attorney would believe in the merit of an argument." Miller v. Bittner, 985 F.2d 935 (8th Cir. 1993).

**Negligent Infliction of Emotional Distress**

Plaintiff based the charge of negligent infliction of emotional distress on a duty allegedly owed by MCI to plaintiff. Plaintiff could not identify a plausible source of that duty. Plaintiff's argument for the existence of a duty rested on an assertion that it was foreseeable that MCI's actions in temporarily suspending plaintiff's access to MCI's network would cause him extreme emotional distress.

"A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. If, under the circumstances, a reasonably prudent person would have anticipated danger and provided against it, courts will recognize a legal duty to prevent harm." Millard v. Corrado, 14 S.W.3d 42, 47 (Mo. App. 1999) (internal citations omitted). In the situation described by the plaintiff, a reasonable person (or corporation) would not have foreseen the danger of extreme emotional distress flowing from the temporary

-8-

interruption of a long-distance network option. From the information available to the defendant, a reasonable person would have assumed that the plaintiff would simply utilize another telecommunications provider to minimize the inconvenience of the temporary unavailability of MCI's network.

Furthermore, if the Court construed the plaintiff's claim as an argument for an extension of the law, the negligence burden to be carried by the defendant would be more akin to responsibility under strict liability. In order to prevent against such a risk the defendant would have to assume the increased burden of ensuring uninterrupted service at all times, because any interruption of service could potentially cause of the same type of injury suffered by the plaintiff. Defendant's actions, in implementing its fraud prevention procedures, were non-negligent. A brief interruption of long-distance service does not entail the foreseeable and unreasonable risk of emotional distress resulting in bodily injury.

Moreover, as discussed in the Order dismissing the case, the claim lacks even the barest causal connection between defendant's actions and plaintiff's injuries. Proximate cause, a necessary element of negligence actions,

> requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage.

State ex rel. Missouri Highway and Transp. Com'n v. Dierker, 961 S.W.2d 58, 60 (Mo. 1998). Plaintiff's claim lacks even "but for"

causation, because plaintiff has only alleged that his son might have tried to call on MCI's network during the period of service interruption, and that talking with him might have helped to solve some of his son's problems and to avert his death.

The question, therefore, is whether a reasonable attorney would have pressed this claim. The Court is compelled to answer in the negative. Counsel apparently proceeds with this complaint on the strength of her client's belief in the possibility that MCI's behavior made a difference in the outcome of the sad circumstances that later transpired. Counsel has an independent duty to investigate the facts and the law of this case, and to utilize reasonable professional judgment about the existence of a claim. The claim is not warranted by existing negligence law, nor has counsel advanced a good faith argument for extension, modification, or reversal of existing law. Plaintiff himself may believe that MCI's alleged interference led to his son's untimely death, but counsel should know better: the legitimate, temporary interruption of MCI long distance service did not cause plaintiff's son's death, nor did it foreseeably cause plaintiff's emotional distress.

### **Intentional Infliction of Emotional Distress**

Plaintiff claims that defendant intentionally inflicted emotional distress by sending him a copy of article published on an Internet site that mentioned Richard and the circumstances surrounding his death. Plaintiff claims that the article was offensive to the memory of his son, that it contained several inaccuracies, and that it was an outrageous act solely intended to

cause him emotional distress.  The defendant states that the article was attached to a letter, sent to plaintiff's counsel, that refused an offer of settlement and reiterated MCI's belief that its actions were unconnected to plaintiff's son's death.

Defendant argues that plaintiff's claim clearly fails because it is premised on statements which would be inadmissible under Rule 408 of the Federal Rules of Evidence.  As discussed more fully in the order dismissing this action, such statements are inadmissible if offered for the purpose of proving the validity or invalidity of the claim or the amount.  Here, the offer is made as proof of a new and independent claim and would be admissible under F.R.E. 408.

Nevertheless, plaintiff's claim would have appeared frivolous to a reasonable and competent attorney.  First and foremost, the article was sent to the plaintiff's counsel, not directly to plaintiff.  Plaintiff's counsel repeatedly blurs this distinction, stating several times that defendant sent the article to plaintiff himself, but also acknowledging that the article was sent directly to her.[5]  It was well within her discretion to not pass along an article that might upset her client, and she was in a better position than defendant's attorney to know of plaintiff's emotional state and whether he thought the article would be objectionable.  At no point did the defendant's representative suggest that counsel

---

[5] See, for example, plaintiff's counsel's September 6, 2005 reply to Theresa Coetzee, MCI's representative: "I forwarded your correspondence to Mr. Davis, who became very upset by your choice of the article attach [sic] to your response." Compl. Ex. 4, at 2.

inform the plaintiff of the contents of the article; the context of the letter makes clear that the article was for counsel's information. The article was not sent by defendant to plaintiff, and thus cannot credibly comprise the intentional infliction of emotional distress.

Additionally, the cases that plaintiff's counsel cites as support for her belief in the viability of the claim deal exclusively with abusive debt collection practices. While it is true that the cases address the extreme and outrageous standard, they have nothing to do with whether or not MCI's behavior here would be considered extreme and outrageous. Plaintiff simply asserts that "[o]ffensive conduct under circumstances of grief over one's deceased child must be deemed far more outrageous than abusive debt collection practices."

Plaintiff's counsel drew no analogy between the practices cited and the allegedly harmful behavior of the defendant. Nor did she recognize the significant role that she herself played in the emotional distress suffered by her client upon his receipt of the article. The Court concludes that a reasonable attorney would have recognized, both based on the facts and on the absence of applicable law, that the plaintiff's claim for intentional infliction of emotional distress had no chance of success and was therefore without merit.

### **Breach of Fiduciary Duty**

"In determining the existence of a fiduciary relationship, the key question is whether or not trust is reposed with respect to the

property or business affairs of another." Grewell v. State Farm Mut. Auto Ins. Co., 162 S.W.3d 503, 509 (Mo. App. 2005). The only relationship that plaintiff alleged was a reiteration of the conclusory assertion that he was an intended beneficiary of a contract between MCI and the United States government. The tenuous connection hypothesized by the plaintiff and his counsel does not describe a fiduciary relationship. Plaintiff's counsel argued that "[a] fiduciary or confidential relationship exists whenever one trusts in and relies on the other [and] [t]o prove such a relationship, there must be evidence of a special trust with respect to property or business." Mem. in Opp. to Mot. to Dismiss at 14. However, counsel's analysis eschewed discussion of a special trust regarding property or business, and argued instead that a fiduciary relationship was created by plaintiff's trust in infallible long-distance service.[6] Simply because plaintiff expected, or even trusted, that his long-distance service would remain uninterrupted does not give rise to a fiduciary relationship. MCI was not the caretaker of property or business affairs of the plaintiff's; plaintiff and MCI did not have a contractual relationship, much less a fiduciary one.

A reasonably competent attorney should have been aware of the differences between a fiduciary relationship and a unidimensional

---

[6] For example, counsel argues that the breach of fiduciary duty claim was adequately stated in the complaint: "Plaintiff justifiably relied on the Defendant to ensure that his ability to place or receive long-distance phone calls would not be needlessly interrupted." Mem. in Opp. to Mot. to Dismiss, at 14.

-13-

reliance on an entity with whom the plaintiff had no prior dealings. Examples of legitimate fiduciary relationships abound in recorded cases, and plaintiff's counsel should have been able to distinguish between them and her client's factual situation. Although plaintiff's counsel conducted enough of an inquiry to state the elements of a fiduciary relationship, she failed to recognize that they did not apply to the facts of plaintiff's case.

**Amount of Sanctions**

Defendant requests that it be awarded "the attorneys' fees it has needlessly incurred responding to a frivolous suit," without stating a specific dollar amount.[7] Under Rule 11, a sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). "[A] district court may assess attorneys fees under its inherent power 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Nielsen v. Trans World Airlines, Inc., 95 F.3d 701, 702 (8th Cir. 1996) [quoting, Dillon v. Nissan Motor Co., 986 F.2d 263, 266 (8th Cir. 1993)] (court upheld district court's assessment of $20,000 in attorneys fees as a sanction, even though district court had not considered non-movant's ability to pay). Moreover, Rule 11 specifically provides that a sanction may consist of a monetary penalty to be paid into the court or an award of some or all of the

---

[7] Plaintiff's counsel included a request for oral argument in her opposition to defendant's motion for sanctions, but the Court finds that the issues have been adequately addressed in the briefs filed by the parties.

attorneys' fees and expenses incurred by the moving party. Fed. R. Civ. P. 11(c)(2). See also, Landscape Properties, Inc. v. Whisenhunt, 127 F.3d 678, 685 (8th Cir. 1997) (court upheld district court's imposition of a $5,000 fine plus attorney fees incurred in the defense of non-movant's frivolous lawsuit; it was non-movant's obligation to present evidence of his inability to pay).

The Court believes that a sanction in the form of an award of attorneys' fees is appropriate to communicate the gravity of the infraction and to deter future non-meritorious filings.[8] Plaintiff's counsel was repeatedly advised that her client's case lacked merit. Although plaintiff filed the case in Missouri state court, Missouri law demands no less than the federal courts require, and attorneys have a duty to conform to the rules of any court before which they appear. The Court fears that plaintiff, although justifiably grieving, sought the "deep pockets" most reasonably (albeit extremely tenuously) connected to his son's death and brought suit. It is counsel's responsibility, both to her client and as an officer of the court, to competently assess the legal landscape and to only assert meritorious claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for sanctions [#12] is **granted**.

---

[8] The defendant will be given the opportunity to submit information in support of its request for attorneys' fees. The Court will then determine the amount to be paid by the plaintiff's counsel as a sanction.

**IT IS FURTHER ORDERED** that the defendant shall have until March 28, 2006, to submit a verified statement of the attorneys' fees it incurred in this action.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2006.